## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JOHN "BURT" MCALPIN,**

   **Plaintiff,**

**v.**                                    **CASE NO. 5:19cv292-TKW/MJF**

**TOWN OF SNEADS, FLORIDA;**
**LYNDA BELL, individually;**
**DANNY PETTIS, individually;**
**DARYL JOHNSON, individually;**
**HELEN GRICE, individually; and**
**SHERRI GRIFFIN, individually,**

   **Defendants.**
_____/

## AMENDED COMPLAINT

Plaintiff, JOHN "BURT" MCALPIN, hereby sues Defendants, TOWN OF
SNEADS, FLORIDA; LYNDA BELL, individually; DANNY PETTIS,
individually; DARYL JOHNSON, individually; HELEN GRICE, individually; and
SHERRI GRIFFIN, individually, and alleges:

## NATURE OF THE ACTION

1.     This is an action brought under § 112.3187 *et seq*., Florida Statutes; the
Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2612, 2624; 42
U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of
state law, of rights, privileges, and immunities secured to individuals such as

Plaintiff by the Constitution and laws of the United States; and 42 U.S.C. § 1988, which authorizes the award of costs and attorney's fees to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

2.      This action involves claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.  This case was removed to this Court by the Defendant

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, JOHN "BURT" MCALPIN, has been a resident of the Florida and was employed as Chief of Police of the Town of Sneads Police Department.  Plaintiff was retaliated against after he opposed or reported gross mismanagement, malfeasance or misfeasance and/or participated in investigations, hearings or other inquiries, and was also retaliated against after exercising his First Amendment rights through his disclosures of various matters of public concern and based on leave time taken under the FMLA.

4.      At all times pertinent hereto, Defendant, TOWN OF SNEADS, FLORIDA ("TOS"), has been organized and existing under the laws of the State of Florida as a law enforcement agency.

5.      At all times pertinent hereto, Defendant, LYNDA BELL ("BELL"), has been a resident of Florida and was employed by Defendant TOS as Sneads Town Manager.  Defendant BELL is sued in her individual capacity and is *sui juris*.

2

6.     At all times pertinent hereto, Defendant, DANNY PETTIS ("PETTIS"), has been a resident of Florida and was a member of the Snead's Town Council.  Defendant PETTIS is sued in his individual capacity and is *sui juris*.

7.     At all times pertinent hereto, Defendant, DARYL JOHNSON ("JOHNSON"), has been a resident of Florida and was a Town Council Member. Defendant JOHNSON is sued in his individual capacity and is *sui juris*.

8.     At all times pertinent hereto, Defendant, HELEN GRICE ("GRICE"), has been a resident of Florida and was Town Council President.  Defendant GRICE is sued in her individual capacity and is *sui juris*.

9.     At all times pertinent hereto, Defendant, SHERRI GRIFFIN ("GRIFFIN"), has been a resident of Florida and was employed by Defendant TOS as Town Clerk.  Defendant GRIFFIN is sued in her individual capacity and is *sui juris*.

## CONDITIONS PRECEDENT

10.     All conditions precedent to this action have been satisfied, if any.

## STATEMENT OF THE ULTIMATE FACTS

11.     Plaintiff began his employment with Defendant TOS on March 6, 2006 as Chief of Police, and held that position until his wrongful termination on October 9, 2018.

12.    During Plaintiff's employment with Defendant TOS, he reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that Plaintiff reported. As the result of the foregoing, Defendant retaliated against Plaintiff by terminating his employment.

13.    Plaintiff also disclosed information protected under § 112.3187(5), Florida Statutes, when he participated in investigations, hearings, or other inquiries and reported malfeasance, misfeasance, and other acts specifically outlined in § 112.3187(5), Florida Statutes.

14.    The retaliation came at the hands of specifically, but not limited to: LYNDA BELL (hereinafter "BELL") City Manager; HELEN GRICE (hereinafter "GRICE") Town Council President; DANNY PETTIS (hereinafter "PETTIS") Town Council Member; and, DARYL JOHNSON (hereinafter "JOHNSON") Town Council Member.

15.    On or about August 18, 2017, JOHNSON approached Plaintiff and requested a traffic citation issued to JOHNSON's son be "taken care of" by Plaintiff. Plaintiff refused JOHNSON's request for improper handling of the citation.

16.     On or about June 11, 2018, Plaintiff notified GRICE that PETTIS and JOHNSON each had previous criminal convictions in Gadsden County, Florida.

17.     Plaintiff advised GRICE that in 1991, PETTIS and JOHNSON were each employed as corrections officers at the Florida State Hospital.  During that time, PETTIS and JOHNSON were each convicted of battery of a disabled inmate, and failure to report use of force.

18.     On or about June 11, 2018, Plaintiff requested of GRICE that neither PETTIS, nor JOHNSON, be appointed as liaison to the Defendant TOS' Police Department due to the nature of their criminal convictions.

19.     On June 12, 2018, rather than respecting Plaintiff's request, GRICE appointed PETTIS as liaison to Defendant TOS' Police Department.

20.     GRICE's appointment of PETTIS was in apparent retaliation against Plaintiff for reporting PETTIS and JOHNSON's prior criminal conduct, because GRICE declined to appoint other more qualified candidates to the liaison position.

21.     Defendant's retaliatory conduct against Plaintiff escalated after GRICE's appointment of PETTIS as liaison.

22.     On or about June 12, 2018, during Defendant TOS' Town Council meeting, PETTIS and JOHNSON directed the illegal removal of disciplinary public records from the personnel file of Defendant TOS' employee, Brad Allen, in violation of Chapter 119, Florida Statutes.

23.     At that time, Plaintiff challenged PETTIS and JOHNSON's directive to remove the public records as a violation of Chapter 119, Florida Statutes.

24.     In August 2018, Plaintiff reported in writing suspected criminal activity by Defendant TOS' officials to the Florida Department of Law Enforcement (FDLE) and Defendant TOS' Town Council members, including but not limited to GRICE, PETTIS and, JOHNSON.

25.     Specifically, on August 3, 2018, Plaintiff presented a written sworn witness' affidavit to FDLE Special Agents Lawson and Dickson, pertaining to suspicious activity regarding Town Clerk Sherri Griffin's (hereinafter "Griffin") possible theft of gate proceeds from a ball tournament.  This was money that belonged to the Town of Sneads and the citizens of the Town.

26.     Plaintiff also reported his concerns regarding Griffin's handling of Defendant TOS' funds and a budget shortage, and possible misappropriation of funds, in the amount of approximately $20,742.00.  These disclosures were among those made when Plaintiff originally reported to FDLE, unlike some the various other disclosures made during FDLE's ensuing investigation.

27.     On or about August 9, 2018, Plaintiff formally advised Defendant TOS in writing that he had reported suspected criminal conduct by Defendant TOS' officials, including but not limited to that of Defendants GRICE, PETTIS and JOHNSON, to FDLE and requested whistleblower status and protection.  After that,

they began to retaliate and acted in concert to fire Plaintiff.  Their actions were deliberate and calculated to effect Plaintiff's termination.

28.     During this time in 2018, Plaintiff suffered from a serious medical condition.  Accordingly, Plaintiff began to take sick leave for medical conditions entitling him to FMLA-protected leave.

29.     By way of further example of Defendants' retaliatory conduct, after Plaintiff reported the matters above, BELL improperly and illegally instructed Plaintiff to violate public records law regarding access to records regarding an active murder investigation and instructed Plaintiff to give records pertaining to an active criminal investigation to a defense attorney for which there was an exemption under Chapter 119, Florida Statutes.

30.     Plaintiff specifically objected to this through inquiries by BELL. Plaintiff responded by stating how her actions were illegal and how her actions would be of concern to the citizens of the Town of Sneads community.

31.     By way of another example of Defendants' retaliation against Plaintiff, BELL also violated HIPPA by improperly and illegally contacting Plaintiff's health care providers attempting to gain access to his medical records and health information.  This was just one of the many instances of harassment of Plaintiff after his disclosures protected under Chapter 112 and the First Amendment were made.

This type of harassment was ongoing through the time of his wrongful termination shortly after his disclosures.

32.     BELL also demanded Plaintiff return his official vehicle to the Defendant TOS' police station while he was on medical leave, including threatening to report the vehicle as stolen and then had the lock cut off of Plaintiff's office door at Defendant TOS' police station to unlawfully gain access to an evidence locker, to which Plaintiff also objected to Defendant verbally and through inquiries by Defendant TOS.

33.     Plaintiff was eventually directed by health care professionals, including his physician, to take time off of work to facilitate his recovery from his serious health condition.  Plaintiff advised BELL on at least three separate occasions of such, however this only intensified the harassment and retaliation by Defendants.

34.     Moreover, BELL badgered and harassed Plaintiff with almost daily emails and telephone calls regarding his vehicle, office, medical leave and other matters during his legitimate and appropriate use of medical leave to address his serious health condition.  Plaintiff objected these unlawful actions as well.

35.     Plaintiff was ultimately placed on FMLA leave by his physician due to his serious health condition.  As such, Defendant TOS was aware of Plaintiff's FMLA status and his serious health condition.   However, Defendant TOS,

specifically through the actions of Defendant BELL, improperly and illegally interfered with Plaintiff's ability to access benefits afforded under the FMLA.

36.     Plaintiff also reported the harassment by Defendants, including but not limited to daily emails from BELL, to Defendant TOS' legal counsel H. Guy Green, who also voiced Plaintiff's objections to Defendant TOS' officials.

37.     Defendants retaliated against Plaintiff for reporting the gross mismanagement, malfeasance, and misfeasance of Defendant's officials including but not limited to Griffin, for reporting matters of public concern to all of the Defendants including the Town Council, and for using medical leave protected under the FMLA, by wrongfully terminating Plaintiff on October 9, 2018, which was also during his FMLA leave.  Plaintiff was told at the time of his termination that he was allegedly insubordinate, which was false and contrived.  All of the individually named Defendants either participated in the decision to fire Plaintiff and/or recommended his termination.

38.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced herein.

## COUNT I
## PUBLIC EMPLOYEE WHISTLEBLOWER RETALIATION
### (against Defendant TOS)

39.     Paragraphs 1 through 38 are realleged and incorporated herein by reference.

40.     This count sets forth a claim against Defendant TOS for whistleblower retaliation under § 112.3187 *et seq.*, Florida Statutes.

41.     Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

42.     Plaintiff reported and disclosed violations of laws, rules and regulations and/or malfeasance, misfeasance and/or gross misconduct within Defendant TOS to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that he reported.  Plaintiff also disclosed this information when he participated in investigations, hearings, or other agency inquiries.  Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in § 112.3187(5), Florida Statutes.

43.     After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation his suspension and termination.

44.     Defendant's actions against Plaintiff were a result of his reporting violations of rules, regulations or laws, and/or his reporting malfeasance, misfeasance or gross misconduct, and/or his participating in investigations, hearings or other inquiries.

45.     The actions of all employees within Defendant TOS who affected Plaintiff's employment adversely did so, at least in part, in retaliation against him for his whistleblowing activities.

46.     As a direct and proximate result of the actions taken against him by Defendant TOS, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, emotional pain and suffering, loss of the capacity for the enjoyment of life, and other economic and noneconomic damages.  These damages have occurred in the past, are occurring at present and will occur in the future.  Plaintiff is entitled to injunctive relief.

### COUNT II
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (against Defendant TOS)

47.     Paragraphs 1 through 38 are realleged and incorporated herein by reference.

48.     This count sets forth a claim against Defendant TOS under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2612, 2624 for harassing Plaintiff due to using leave time, and for taking adverse actions against Plaintiff

including but not limited to his wrongful termination for taking time off that was authorized by and protected under the FMLA. This is thus both an interference and retaliation claim.

49.    After Plaintiff sought leave for his medical conditions, Defendant TOS harassed Plaintiff and took adverse employment actions against him.

50.    Plaintiff was denied rights and benefits conferred by the FMLA and was terminated after requesting and being on protected leave.

51.    Plaintiff worked for Defendant TOS for more than one year and worked for more than 1,250 hours in the year immediately preceding his need for leave under the FMLA. Defendant TOS has 50 employees within a 75 mile radius and is subject to the FMLA.

52.    Defendant TOS' violations of the FMLA were willful.

53.    As a direct and proximate result of Defendant TOS' willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages including but not limited to loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages as well as benefits and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future. Plaintiff is entitled to injunctive relief.

## COUNT III
## <u>FIRST AMENDMENT RETALIATION</u>
### (against Defendant TOS)

54.     Paragraphs 1 through 38 are realleged and incorporated herein by reference.

55.     This count sets forth a claim against Defendant TOS for First Amendment retaliation and is brought through 42 U.S.C. § 1983.

56.     Defendant TOS took actions in violations of Plaintiff's rights under the First Amendment of the United States Constitution.

57.     These violations were of the type and character as to which any reasonable person or institution would be aware.

58.     Plaintiff's rights to freedom of political expression, association, participation and belief were violated.

59.     Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

60.     Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

61.    After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as set forth in part above, including without limitation his wrongful termination.

62.    Defendant TOS infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity.

63.    Defendant TOS' actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

64.    Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

65.    The conduct engaged in by Defendant TOS was in callous and willful disregard of Plaintiff's constitutional rights.

66.    Defendant TOS, through its Town Council and other upper-level personnel, were the final policymakers in Plaintiff's termination and are persons under the laws applicable to this action.

67.    Defendant TOS, through its Town Council and other upper-level personnel, was the final decision maker in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.

68.     At all times pertinent hereto, Defendant TOS, through its Town Council and other upper-level personnel, acted under color of state law when it made the decision and/or participated in the adverse employment actions against Plaintiff.

69.     Defendant TOS' actions in disciplining and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

70.     The actions by and on behalf of Defendant TOS set forth in this count were not unique events of the violations set forth herein.  On information and belief, further similar events of wrongful actions on the part of Defendant TOS and/or its employees or agents have occurred, such events combining to determine a pattern of similar wrongful and illegal behavior.

71.     Defendant TOS, after notice of the constitutional violations alleged herein, officially sanctioned such actions and refused to discipline its agents and employees including but not limited to the individually listed defendants in this action, which sanction and refusal established a policy, by a final policymaker, that directly or indirectly resulted in violations of Plaintiff's constitutional rights.

72.     As a direct and proximate result of the actions of Defendant TOS, Plaintiff has been injured and seeks prospective injunctive relief, attorney's fees and costs.  Plaintiff is not seeking damages under this count.  Plaintiff is entitled to

reinstatement and other equitable actions attendant thereto including without limitation attorney's fees and costs under 42 U.S.C. § 1988.

## COUNT IV
## FIRST AMENDMENT RETALIATION
### (against Defendant BELL)

73.     Paragraphs 1 through 38 are realleged and incorporated herein by reference.

74.     This count sets forth a claim against Defendant BELL in her individual capacity for First Amendment retaliation, and is brought through 42 U.S.C. § 1983.

75.     Defendant BELL took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.  Bell is a person under the laws applicable to this Count.

76.     Plaintiff's rights to freedom of political expression, association, participation and belief were violated.  Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

77.     Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

78.    After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as described in part above.

79.    Defendant BELL infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking, through her participation and/or recommendations in the decision-making process, adverse actions against him in retaliation for his protected activity.

80.    Defendant BELL's actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

81.    Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

82.    Defendant BELL's actions were in callous and willful disregard of Plaintiff's constitutional rights, thereby authorizing an award of punitive damages against Defendant BELL in her individual capacity.

83.    Defendant BELL personally participated in the adverse actions against Plaintiff in violation of his First Amendment right to free speech.

84.    Defendant BELL was a final decisionmaker or recommender in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.  Further, Defendant BELL's recommendation that Plaintiff be terminated was improper and contrived.

85.    At all times pertinent hereto, Defendant BELL acted under color of state law when she participated in the adverse employment actions against Plaintiff.

86.    Defendant BELL's participation in disciplining and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

87.    Defendant BELL acted with malice against Plaintiff and/or in reckless disregard of his clearly established rights under the First Amendment.

88.    As a direct and proximate result of the actions of Defendant BELL, Plaintiff has suffered lost wages, benefits and economic tangible damages.  He also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other noneconomic damages.  These losses have occurred in the past, are occurring at present, and are likely to continue into the future.  Plaintiff is entitled to an award against Defendant BELL for costs and attorney's fees. Plaintiff is also entitled to punitive damages against Defendant BELL in her individual capacity.

## COUNT V
## FIRST AMENDMENT RETALIATION
### (against Defendant PETTIS)

89.    Paragraphs 1 through 38 are realleged and incorporated herein by reference.

90.     This count sets forth a claim against Defendant PETTIS in his individual capacity for First Amendment retaliation, and is brought through 42 U.S.C. § 1983.  Pettis is a person under the laws applicable to this Count.

91.     Defendant PETTIS took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

92.     Plaintiff's rights to freedom of political expression, association, participation and belief were violated.  Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

93.     Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

94.     After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as described in part above.

95.     Defendant PETTIS infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity.

96.     Defendant PETTIS' actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

97.     Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

98.     Defendant PETTIS' actions were in callous and willful disregard of Plaintiff's constitutional rights, thereby authorizing an award of punitive damages against Defendant PETTIS in his individual capacity.

99.     Defendant PETTIS personally participated in the adverse actions against Plaintiff in violation of his First Amendment right to free speech.

100.    Defendant PETTIS was a final decisionmaker or recommender in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.

101.    At all times pertinent hereto, Defendant PETTIS acted under color of state law when he made the decisions and/or participated in the adverse employment actions against Plaintiff.

102.    Defendant PETTIS' participation in disciplining and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

103.   Defendant PETTIS acted with malice against Plaintiff and/or in reckless disregard of his clearly established rights under the First Amendment.

104.   As a direct and proximate result of the actions of Defendant PETTIS, Plaintiff has suffered lost wages, benefits and economic tangible damages.  He also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other noneconomic damages.  These losses have occurred in the past, are occurring at present, and are likely to continue into the future.  Plaintiff is entitled to an award against Defendant PETTIS for costs and attorney's fees. Plaintiff is also entitled to punitive damages against Defendant PETTIS in his individual capacity.

## COUNT VI
## <u>FIRST AMENDMENT RETALIATION</u>
### (against Defendant JOHNSON)

105.   Paragraphs 1 through 38 are realleged and incorporated herein by reference.

106.   This count sets forth a claim against Defendant JOHNSON in his individual capacity for First Amendment retaliation, and is brought through 42 U.S.C. § 1983.  Johnson is a person under the laws applicable to this Count.

107.   Defendant JOHNSON took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

108.   Plaintiff's rights to freedom of political expression, association, participation and belief were violated.  Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

109.   Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

110.   After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as described in part above.

111.   Defendant JOHNSON infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity.

112.   Defendant JOHNSON's actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

113.   Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

114.   Defendant JOHNSON's actions were in callous and willful disregard of Plaintiff's constitutional rights, thereby authorizing an award of punitive damages against Defendant JOHNSON in his individual capacity.

115.  Defendant JOHNSON personally participated in the adverse actions against Plaintiff in violation of his First Amendment right to free speech.

116.  Defendant JOHNSON was a final decisionmaker or recommender in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.

117.  At all times pertinent hereto, Defendant JOHNSON acted under color of state law when he made the decisions and/or participated in the adverse employment actions against Plaintiff.

118.  Defendant  JOHNSON's  participation  in  disciplining  and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

119.  Defendant JOHNSON acted with malice against Plaintiff and/or in reckless disregard of his clearly established rights under the First Amendment.

120.  As a direct and proximate result of the actions of Defendant JOHNSON, Plaintiff has suffered lost wages, benefits and economic tangible damages.  He also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other noneconomic damages.  These losses have occurred in the past, are occurring at present, and are likely to continue into the future.  Plaintiff is entitled to an award against Defendant JOHNSON for costs and

attorney's fees.  Plaintiff is also entitled to punitive damages against Defendant JOHNSON in his individual capacity.

**COUNT VII**
**<u>FIRST AMENDMENT RETALIATION</u>**
**(against Defendant GRICE)**

121.    Paragraphs 1 through 38 are realleged and incorporated herein by reference.

122.    This count sets forth a claim against Defendant GRICE in her individual capacity for First Amendment retaliation, and is brought through 42 U.S.C. § 1983. Grice is a person under the laws applicable to this Count.

123.    Defendant GRICE took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

124.    Plaintiff's rights to freedom of political expression, association, participation and belief were violated.  Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

125.    Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

126.   After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as described in part above.

127.   Defendant GRICE infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking adverse actions against him in retaliation for his protected activity.

128.   Defendant GRICE's actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

129.   Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

130.   Defendant GRICE's actions were in callous and willful disregard of Plaintiff's constitutional rights, thereby authorizing an award of punitive damages against Defendant GRICE in her individual capacity.

131.   Defendant GRICE personally participated in the adverse actions against Plaintiff in violation of his First Amendment right to free speech.

132.   Defendant GRICE was a final decisionmaker or recommender in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.

133.   At all times pertinent hereto, Defendant GRICE acted under color of state law when she made the decisions and/or participated in the adverse employment actions against Plaintiff.

134.   Defendant GRICE's participation in disciplining and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

135.   Defendant GRICE acted with malice against Plaintiff and/or in reckless disregard of his clearly established rights under the First Amendment.

136.   As a direct and proximate result of the actions of Defendant GRICE, Plaintiff has suffered lost wages, benefits and economic tangible damages.  He also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other noneconomic damages.  These losses have occurred in the past, are occurring at present, and are likely to continue into the future.  Plaintiff is entitled to an award against Defendant GRICE for costs and attorney's fees.  Plaintiff is also entitled to punitive damages against Defendant GRICE in her individual capacity.

## COUNT VIII
## FIRST AMENDMENT RETALIATION
### (against Defendant GRIFFIN)

137.   Paragraphs 1 through 38 are realleged and incorporated herein by reference.

138.   This count sets forth a claim against Defendant GRIFFIN in her individual capacity for First Amendment retaliation, and is brought through 42 U.S.C. § 1983.  Griffin is a person under the laws applicable to this Count.

139.   Defendant GRIFFIN took actions in violation of Plaintiff's rights under the First Amendment of the United States Constitution.  These violations were of the type and character as to which any reasonable person would be aware.

140.  Plaintiff's rights to freedom of political expression, association, participation and belief were violated.  Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

141.   Plaintiff engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations and otherwise speaking out on matters that are of public concern as described in part above.

142.   After engaging in this protected activity, Plaintiff was the victim of retaliatory actions as described in part above.

143.   Defendant GRIFFIN infringed on Plaintiff's constitutionally protected interests under the First Amendment by taking, through her participation and/or recommendations in the decision-making process, adverse actions against him in retaliation for his protected activity.

144.   Defendant GRIFFIN's actions against Plaintiff constituted retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

145.   Plaintiff's protected activity was substantial or motivating factor in the adverse actions taken against him.

146.   Defendant GRIFFIN's actions were in callous and willful disregard of Plaintiff's constitutional rights, thereby authorizing an award of punitive damages against Defendant GRIFFIN in her individual capacity.

147.   Defendant GRIFFIN personally participated in the adverse actions against Plaintiff in violation of his First Amendment right to free speech.

148.   Defendant GRIFFIN was a final decisionmaker or recommender in the decisions to take adverse employment actions against Plaintiff after he engaged in protected First Amendment activity.

149.   At all times pertinent hereto, Defendant GRIFFIN acted under color of state law when she made the decisions and/or participated in the adverse employment actions against Plaintiff.   Further, Defendant GRIFFIN's recommendation that Plaintiff be terminated was improper and contrived.

150.   Defendant GRIFFIN's participation in disciplining and/or terminating Plaintiff was the type of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights.

151.   Defendant GRIFFIN acted with malice against Plaintiff and/or in reckless disregard of his clearly established rights under the First Amendment.

152.   As a direct and proximate result of the actions of Defendant GRIFFIN, Plaintiff has suffered lost wages, benefits and economic tangible damages.  He also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life and other noneconomic damages.  These losses have occurred in the past, are occurring at present, and are likely to continue into the future.  Plaintiff is entitled to an award against Defendant GRIFFIN for costs and attorney's fees. Plaintiff is also entitled to punitive damages against Defendant GRIFFIN in her individual capacity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding all legally available general and compensatory damages and

economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)     enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e)     enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate;

(g)     enter judgment awarding Plaintiff punitive damages against Defendants BELL, PETTIS, JOHNSON, GRICE and GRIFFIN in their individual capacities; and

(h)     grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 13th day of September 2019.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all counsel of record by CM/ECF this 13th day of September, 2019.

/s/ Marie A. Mattox
Marie A. Mattox