UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN "BURT" MCALPIN,

     Plaintiff,

v.                                                                    CASE NO. 5:19cv292-TKW-MJF

TOWN OF SNEADS, FLORIDA, et al.,

     Defendants.

_____/

## TOWN OF SNEADS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I OF THE AMENDED COMPLAINT [ECF.11]

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56.1, and this Court's Initial Scheduling Order [ECF.4], Defendant, TOWN OF SNEADS, FLORIDA, (hereinafter "the Town") moves this Court for summary judgment as to Count I of the Amended Complaint, and as grounds states:

1.    Plaintiff filed a lawsuit bringing three counts against the Town:

    Count I – Violation of the Florida Public Whistleblower Act (FPWA);
    Count II – Violation of the Family and Medical Leave Act (FMLA); and
    Count III – First Amendment Retaliation.

This motion addresses only Count I.

2.    A claim under the FPWA must be filed within 180 days of the purportedly retaliatory action. Florida Statutes, §112.3187(8)(b).

3.     The latest action alleged by Plaintiff to have occurred was his termination on October 9, 2018. [Amended Complaint, ECF.11, ¶¶ 11, 37]. As such, Plaintiff's limitations period for the FPWA claim expired on Monday, April 8, 2019, i.e., 180 days from his termination.

4.     The stamp on the lower right side of the first page of the Complaint filed in the Leon County Circuit Court, Case No. 2019-CA-1714 [ECF.16-1, p.3], as well as the docket itself [ECF.16-1, pp.1-2], exhibit a filing date of July 19, 2019, at 12:33p.m., more than three months beyond the deadline.

5.     Plaintiff will contend his Complaint relates back to March 22, 2019, when he first submitted his Complaint for filing through the e-portal. However, Plaintiff abandoned such document and his lawsuit was not filed with the circuit court until July.

6.     Plaintiff failed to timely file his claim under the Florida Public Whistleblower Act. No tolling or other equitable remedies apply.

WHEREFORE, Defendant, Town of Sneads, Florida, respectfully requests this Court grant summary judgment in its favor as to Count I which was not filed within the applicable statute of limitations.

## STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 56, N.D. Fla. Local Rule 56.1, and this Court's Initial Scheduling Order [ECF.4], the Town offers the statement of facts below in support of its Motion for Summary Judgment:

Service of Process

On July 19, 2019, the Town was served with a Summons and Complaint bearing this style for the *Fourteenth* Judicial Circuit for *Jackson* County:



[Affidavit of Lynda Bell, Town Manager; ECF.16-2, ¶4, and Exh. A]. Only the Summons bore the Case No. 19-CA-1714. [ECF.16-2, ¶5]. Neither document contained a date and time affixed by the Florida Courts E-Filing Portal (hereinafter "E-Filing Portal") or a manual filing stamp from the Leon County Clerk of Court; however, the Summons was hand-dated "07/19/19" by the Leon County Clerk. [ECF.16-2, ¶5]. No other documents were served with the Summons and Complaint. [ECF.16-2, ¶6]. The signature block for Plaintiff's

3

counsel appearing on the last page follows a date of March 22, 2019. [ECF.16-2, Exh. A].

Upon receipt, counsel for the Town began preparing the Town's response and removal documents. To that end, counsel accessed the Jackson County Clerk of Court's online docket but was unable to locate the pending action. After inquiry, the Jackson County Clerk of Court's office advised that it had no such case. [Affidavit of Clayton O. Rooks, III, Jackson County Clerk of Court and Comptroller; ECF.16-3, ¶4]. The Clerk explained that a case number ending in "1714" could not be a Jackson County case as such a volume of cases had not been filed in 2019. [ECF.16-3, ¶5-6]. This case has never been filed in the Fourteenth Judicial Circuit for Jackson County, Florida. [ECF.16-3, ¶4].

Filing in Leon County

After searching dockets in other counties, counsel for the Town located the case which was filed in *Leon* County on July 19, 2019 -- the same day service was effected on the Town. [ECF.16-1, pp.1-2]. The Leon Clerk assigned the matter a July case number as evidenced by the filing dates of the matters numerically preceding and following the instant matter. [Leon County Circuit Court dockets for 2019-CA-1713 and 2019-CA-1715, ECF.16-4].

A review of the Leon County docket revealed a variety of papers, activity, and an Order all dated July 19, 2019, the same date as service of the Complaint on Defendant. [ECF.16-1, pp.1-2].

| Docket Date | Docket Code | Docket Text |
|---|---|---|
| 7/19/2019 | COMP_CA | COMPLAINT |
| 7/19/2019 | CCS | CIVIL COVER SHEET |
| 7/19/2019 | ORDR | ORDER GRANTING IN PART MOTION TO CORRECT INITIAL FILING OF COMPLAINT, PRESERVE FILING DATE AND ACCEPT COMPLAINT AS TIMELY FILED |
| 7/19/2019 | a002 | JUDGE COOPER, JOHN C: ASSIGNED |
| 7/19/2019 | CFLL | CIVIL FEE LATE LETTER |
| 7/19/2019 | SUIS | SUMMONS ISSUED |
| 7/19/2019 | CFLL | CIVIL FEE LATE LETTER |
| 7/19/2019 | EMAIL | EMAIL SENT TO MATTOX, MARIE A RE SERVICE OF COURT DOCUMENT – 2019 CA 001714, MCALPIN, JOHN BURT VS. TOWN OF SNEADS FLORIDA WITH 1 ATTACHMENTS: CFLL-7/19/2019 |
| 7/19/2019 | MOTO | MOTION TO CORRECT INITIAL FILING OF COMPLAINT, PRESERVE FILING DATE AND ACCEPT COMPLAINT AS TIMELY FILED |

Of particular note was Plaintiff's Motion to Correct Initial Filing which asked the circuit court – *ex parte* – to deem the Complaint filed on March 22, 2019. [ECF.16-1, pp.18-22, hereinafter "Plaintiff's *ex parte* Motion"]. The Complaint contained in the Leon County Circuit Court docket differs from that served on the Town in that it features this reference number and time-stamp in the upper left-hand corner, "Filing # 86854947 E-Filed 03/22/2019 05:13:59 P.M.;" however, the same document was also machine-stamped in the bottom right-hand corner: "**FILED 2019 JUL 19 P 12:33**." [ECF.16-1, p.3]. The unusual nature of this document, the incongruity between the E-Portal time-stamp and manual Clerk's stamp, and the unstamped version served on Defendant, combined with the motion and order, prompted the undersigned to further investigate the circumstances surrounding the initiation of this matter and revealed the following history:

E-Filing Portal and Governing Rules

The E-Filing Court Records Portal (hereinafter "E-Filing Portal"), is a statewide access point for electronic access and transmission of court records to and from the Courts. It is governed by the Florida Courts E-Filing Authority ("EFA"), in consultation with the Florida Courts Technology Committee ("FCTC"). [Affidavit of Carolyn Weber, ECF.16-5, ¶5; and Florida Courts E-Filing Portal User Manual, ECF.16-6, p.12].

The EFA is a public entity created by the "Interlocal Agreement Establishing the Florida E-filing Authority" (hereinafter "Interlocal Agreement") between Florida's various Clerks of the Circuit Court and the Clerk of the Florida Supreme Court, as the designee of the Chief Justice of the Florida Supreme Court. [ECF.16-5, ¶4]. It oversees and manages the day-to-day operation of the Florida Courts E-Filing Portal. [ECF.16-5, ¶9].

Electronic filing via the E-Portal has been mandatory for Florida attorneys since April 1, 2013. [ECF.16-5, ¶8; *see also* Florida Supreme Court Administrative Order No. AOSC 13-6, ECF.16-7, p. 2, ¶2]. Per the Interlocal Agreement, the EFA has the express power:

> iv.     To exercise exclusive jurisdiction, control and supervision over the E-Filing Court Records Portal and to make and enforce such rules and regulations for the maintenance, management, upgrade and operation of the E-Filing Court Records Portal as may be, in the judgment of the Board, necessary or desirable for the efficient

operation of the E-Filing Court Records Portal in accomplishing the
purposes of this Interlocal Agreement.

[Interlocal Agreement, Article 4, Powers and Duties, Section 4.1(a)(iv), ECF.16-8, p.2].

On Friday, March 22, 2019, Plaintiff, by and through his counsel, submitted the Complaint, Civil Cover Sheet, and Summons via the Florida Courts E-Filing Portal which were collectively assigned E-Portal Filing #86854947 as a reference. [Affidavit of Beth Allman, Fla. E-Filing Authority for the Fla. Clerks & Comptrollers, ECF.16-9, pp.2,8]. Pursuant to FSC e-Standard 3.1.8[1] [ECF.16-10, p.7] and the Florida Courts E-Filing Portal E-Filer User Manual, version December 2018.02v2 (hereinafter "E-Filer User Manual")[2] [ECF.16-6, pp.15-16], acknowledgment messages were automatically generated and transmitted

_____

[1] Version 18.0, adopted modifications August 2017
 https://www.flcourts.org/content/download/219028/1980114/Updated-E-Access-Standards-August-2017-v18-clean.pdf

[2] http://archive.flclerks.com/e-Filing_Authority/Resources/Manuals/Manuals_2018/Portal_E-Filer_User_Manual_December_2018.pdf

The E-Filer User Manual articulates this step in the filing process:

1. The **Filing Received Confirmation** page:
Immediately upon submitting the filing the filer will receive a confirmation notice.   This notice provide
the filing reference number.  This number is needed if the filer contacts the county regarding the filing
prior to a case number being assigned to the filing.

electronically from the E-Portal to the filer, specifically to the following three email addresses associated with the law firm of Plaintiff's counsel:

- marie@mattoxlaw.com;
- michelle@mattoxlaw.com; and
- marlene@mattoxlaw.com

[ECF.16-1, pp.21-22].

The Pending Queue and abandonment

Pursuant to FSC e-Standard 3.1.9, "[w]hen information *has been submitted* via the Florida Courts E-Filing Portal, the Clerk of Court will review the filed document and determine whether it contains the required information for placement into the clerk's case maintenance system." [ECF.16-10, p.7]. If approved by the reviewing clerk, the e-filer receives another email verifying that the filing was processed successfully.[3]  [ECF.16-6, p.17]. If not, "the clerk shall place the filed document into a pending queue." [ECF.16-10, p. 7]. This is so "for any reason that *prevents the filing from being accepted* into the clerk's case maintenance system," including, but not limited to, conflicts with any court rules or standards. [ECF.16-10, p.7 (*emphasis added*); and ECF.16-6, p.22]. The

---

[3] [ECF.16-6, p.17].

**Processing Completed for Filing**
After the Clerk completes the review of the filing, the E-Filer receives another email verifying that the filing was processed successfully.

Manual further expounds on reasons why submissions are placed in the "correction queue":

> The reason why the submission was returned to the **Correction Queue** will also be displayed on the **My Alerts** page and on the **My Submissions** page under the **Completion Date/Remarks** column. A submission can be returned to the **Correction Queue** for a variety of reasons: document is corrupt, document is unsigned, wrong case number was selected, for case initiation wrong case type was selected, reopen fee is required, etc. The Clerk will explain the problem so that you are aware of what needs to be corrected so that you can make those changes and resubmit the document.

[ECF.16-6, p.22]. This exact process is mirrored on the Leon County Clerk's Website under Online Services/Electronic Filing in Leon County/Filing Your Documents:[4]

> - You will receive two emails from the portal regarding your filing: One when the filing is submitted and a second when the filing is accepted. If the filing is not accepted for any reason, it will be returned to you for correction in a "pending queue"; the portal will notify you via email with the reason the document is being returned to you and provide instructions as to how you correct your filing.

Although Plaintiff selected *Leon* County, Florida, in the *Second* Judicial Circuit, as the filing venue in the E-Portal,[5] the case was styled for *Jackson* County, Florida, in the *Fourteenth* Judicial Circuit. [ECF.16-1, p.3]. In accordance with the EFA rules, Plaintiff's error caused the Leon County Circuit Court Clerk's Office to flag the Complaint during processing of the E-Portal submission. Specifically, on

---

[4]https://cvweb.clerk.leon.fl.us/public/online_services/electronic_filing/e_filing
.asp

[5] Despite Plaintiff's claim in his *ex parte* Motion that it was an "administrative error" and, by implication, the fault of the clerk, the Manual makes clear that the selection of the appropriate venue is the duty of the filer. [ECF.16-6, pp.8-18, 24].

Monday, March 25, 2019, Myeisha Coggins with the Leon County Circuit Court Clerk's Office notified Plaintiff's counsel via email that the Complaint was being placed in the Court's "correction" or "pending" queue. [ECF.16-9, p.3]. This correspondence was directed to the same three email addresses associated with counsel for Plaintiff to which the previous confirmation email had been directed and received three days earlier [ECF.16-9, p.3] and contained the subject: "Filing # 86854947 *Not Filed* – Please Correct Filing in the E-Filing Portal Pending Queue" (*emphasis added*) [ECF.16-9, p.3]. Following the date and time, i.e., March 25, 2019, at 08:25 A.M., the email provided in pertinent part:



The Clerk's correspondence informed opposing counsel regarding the five

business-day "correction" queue window and emphasized that, because of the styling error made by opposing counsel, the document had not been accepted as filed: "Please make the following correction(s):  Case styled for Jackson County please correct and resubmit."  [ECF.16-9, p.3]. Importantly, counsel for Plaintiff was advised of a correction that needed to be made at least seven different times within this email. The message clearly conveys that it must be corrected *before it can be filed."* [ECF.16-9, p.3].

EFA records, including the audit trail[6]  and machine server language for E-Portal Filing # 86854947[ECF.16-11, ¶5, Exh. A], confirm that the March 25, 2019, "correction queue email" was properly delivered to the three Mattox Law addresses without error messages or "bounce-backs" following a "handshake" between the servers.[7] [ECF.16-11, ¶¶9, 12, and Exh. A]. If the emails had not been accepted by the Mattox Law server, an error message would have been generated notifying the E-Portal that the email had not been delivered. [ECF.16-11, ¶13].

The User Manual provides that once a document has been moved to the correction queue, and has not been corrected within five business days, the

---

[6] Plaintiff's submissions to the Clerk and the notices sent by the E-Portal are also logged in an E-Portal Action History maintained by the Leon County Clerk. [ECF.16-9, p.8].

[7] This contradicts Plaintiff's representation in his *ex parte* Motion. [ECF.16-1, pp. 18-22].

county clerk is authorized to move the document to the "abandoned filing" queue. [ECF.16-5, ¶ 11; ECF.16-6, p.27]. In accordance therewith, after the passage of five business days without correction, the clerk advised Plaintiff's counsel that the pleading had been deemed abandoned. [ECF.16-9, p.4]. This April 3, 2019, email contained the subject "Filing # 86854947 – Moved to Abandoned Filing Queue."[8] [ECF.16-9, p.4]. In addition to the subject line, the email notified Plaintiff twice more that the pleading had been moved to the "Abandoned Filing Queue." [ECF.16-9, p.4]. The notice further warned Plaintiff that because the pleading had been deemed abandoned, "no further action" would be taken and that Plaintiff must "correct and *re-file*" the document.[9] (*emphasis added*) [ECF.16-9, p.4] At that point, the document was "deemed to have been abandoned and [was] *unable to be filed* in the official court record."

---

[8] This email was, again, sent to the same three (3) email addresses associated with Plaintiff's counsel's firm. [ECF.16-9, p. 4].

[9] EFA records, including the audit trail [ECF.16-11, Exh. A] and machine server language for E-Portal Filing # 86854947 [ECF.16-9, p. 5], confirm that the April 3, 2019, "abandoned queue email" was also properly delivered to the three Mattox Law addresses.

[ECF.16-6, p.27(*emphasis added*)].[10]

In addition to the emails specifically related to this particular case, the E-Portal is configured in a manner so as to allow each user to see a list of her cases and their status with a click on "My Cases." [ECF.16-6, p.5]. Furthermore, if any alert is sent to an e-filer (such as placement in the correction queue), that alert appears each time the user logs into the Portal until such time as it is either resolved or cleared. [ECF.16-6, pp.6-7].

Despite the notices directly from the Leon Clerk of Court and the E-Portal alerts appearing at each login by counsel, Plaintiff never corrected the deficient submission in the Leon County Circuit Court [ECF.16-9, p.4] and, furthermore, failed to file the Complaint in the correct venue of Jackson County, Florida, during the prescribed "correction" queue time period or at *any* time. [ECF.16-3, ¶4]. Plaintiff's failure to timely correct the document resulted in it being abandoned

---

[10] The Manual clearly establishes that a document moved to the "abandoned filing queue" is deemed to have been abandoned and unable to be filed into the official court record." [ECF.16-6, p.27 (*emphasis added*)].

**Abandoned Filing Queue**

If a document that has been moved to **Correction Queue** has not been corrected within five (5) business days, the county has the ability to move the filing to the **Abandoned Filing Queue.** Once a document has been moved to **Abandon Filing** status, no updates/corrections can be made to that submission on the Portal by the filer.  It is deemed to have been abandoned and unable to be filed into the official court record.

**E-Filer Manual version 2018.02**                                              **Page 152**

and "unable to be filed." [ECF.16-9, p.4; ECF.16-6, p.27; ECF.16-5, ¶11].

The E-Portal Action History reflects the file was "opened for review" by Robyn Peters of the Leon County Clerk's office on June 19, 2019, essentially corresponding with the date counsel indicates her office "discovered" the misfiling, *i.e.* June 18, 2019. [ECF.16-9, p.8; ECF.16-1, p.18, ¶5]. Despite being aware that the pleading had been abandoned, Plaintiff still took no action to correct the style deficiency in Leon County, or to file the case in the proper venue of Jackson County. [ECF.16-9, p.4; ECF.16-3, ¶4]

Yet, another month later, on July 18, 2019, the E-Portal Action History again reflects the file was "opened for review," this time by Liz Alford of the Leon County Clerk's office. [ECF.16-9, p.8]. This closely corresponds with the Circuit Court's July 19, 2019, consideration of and ruling on Plaintiff's *ex parte* Motion. [ECF.16-1, pp.14-15].

On July 10, 2019, instead of e-filing, Plaintiff provided his *ex parte* Motion via some alternate means to the Honorable Chief Judge Jonathan Sjostrom who, in turn, assigned it to the Honorable Judge John Cooper as Administrative Judge of the Civil Division. [ECF.16-1, pp.14-15]. In the *ex parte* Motion, counsel for Plaintiff categorically stated "notifications of corrections or mis-filings were not received by the undersigned's firm," and further claimed that she only

"discovered that the filing had not been process [sic] by the Clerk" when her assistant accessed the portal on June 18, 2019. [ECF.16-1, pp.18-19, ¶5].

The manual date stamp on the bottom right-hand corner of the *ex parte* Motion is July 19, 2019; it does not have an E-Portal time stamp. [ECF.16-1, p.18]. On July 19, 2019, Judge Cooper entered the *Order Granting in Part Motion to Correct Initial Filing.* [ECF.16-1, pp.14-15]. Specifically, the circuit court denied Plaintiff's request to determine the Complaint was timely filed stating it "[did] not possess sufficient information to make that determination." [ECF.16-1, pp.14-15]. The court ordered the Clerk to retrieve the filing from the abandoned queue and "move it to the correction queue for processing."[11] This allowed assignment of a case number, and "preserving" of the March 22, 2019, filing date for future consideration by the Court. [ECF.16-1, pp.14-15]. The final paragraph of the Order[12] makes clear that the motion has been considered and the order has been entered *ex parte* and could be re-visited upon appearance by counsel for the Town. [ECF.16-1, p.15].

---

[11] Defendant infers this was to preserve the *status quo* until such time as additional evidence could be marshaled and argument presented (such as this motion). The order is thus not entitled to any deference or presumption of finality.

[12] The Order further directs Plaintiff's counsel to serve a copy of the order on the City Attorney for the Town. [ECF.16-1, p.15]. Neither Town Attorney John Reid, nor Josefina Tamayo, were served with a copy of the Court's *Order.* [ECF.16-12, ¶5, Affidavit of John Reid; ECF.16-13, ¶5, Affidavit of Josefina Tamayo]. Nor did the *Order Granting in Part Motion to Correct* accompany service of the Summons and Complaint. [ECF.16-1, Exh. A].

That same day – July 19, 2019 – after the passage of nearly four months from the time Plaintiff first submitted the Complaint to the E-Portal, the Leon County Clerk docketed a version of Plaintiff's Complaint with the E-filing Reference number and time stamp (Filing# 86854947 E-Filed 03/22/2019 05:13:59 PM), along with the machine stamp stating "**FILED 2019 JUL 19 P 12:33**" in the bottom right-hand corner of the document. [ECF.16-1, p.3].

## MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(B), Defendant Town of Sneads offers the following memorandum of law in support of its motion:

### I.   Motion for summary judgment standard

Summary judgment is appropriate if, based on materials in the record, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56. This standard provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (*emphasis in original*).

"A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Anderson* at 252. "'Unsupported speculation … does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Giles v. Winn-Dixie Montgomery, LLC*, 574 Fed. Appx. 892, 894 (11th Cir. 2014 (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)).

Under the facts of this case, the March 22 date Plaintiff first submitted his Complaint through the E-filing portal is not the date his Complaint was filed for purposes of determining the timeliness of his Whistleblower claim.

II.   <u>The clerk's July 19, 2019 stamp is presumptive evidence of the filing date.</u>

The clerk's date and time stamp on the face of the Complaint is July 19, 2019. [ECF.16-1, p.3]. A clerk's time stamp is presumptive evidence of the date of filing. *Strax Rejuvenation and Aesthetics Institute, Inc. v. Shield,* 49 So.3d 741, 743 (Fla. 2010) (following the Third District Court of Appeal's decision in

*Weintraub v. Alter,* 482 So.2d 454 (Fla. 3d DCA 1986) with respect to a notice of appeal).

Nevertheless, the Town anticipates Plaintiff will argue the true date of filing is March 22, 2019, as reflected by the reference label electronically affixed in the upper left-hand corner of the Complaint appearing in the Leon County Clerk's docket. [ECF.16-1, p.3]. A plaintiff may "overcome the presumption that the clerk's time stamp accurately indicates the date of filing by submission of competent, substantial evidence." *Strax,* 49 So.3d at 742. Plaintiff McAlpin cannot do so.

### III.   Plaintiff's March 22, 2019, submission was "abandoned" and not filed into the official court record

The record confirms that Plaintiff's Complaint submitted on March 22, 2019, was transmitted to the wrong court, was not accepted by the Leon County Clerk into its maintenance system, and was deemed under the e-filing rules to have been "abandoned" by Plaintiff when he failed to correct the deficiencies. The Leon County Clerk promptly reviewed the submission and notified Plaintiff's counsel via email of the deficiency, giving her five days to correct the error. When she did not do so, the Leon County Clerk moved the document to the abandoned queue and, once again, advised counsel of the same.

FSC Standard 3.1.9., *Review by Clerk of Court*, directs the Clerk of Court to review a document submitted through the E-Portal to determine if it meets the

requirements for placement in the Clerk's case maintenance system. [ECF.16-10, p.7]. The Clerk may place a document into the "pending queue" based on conflict with any court rule or standard that "prevents the filing from being accepted into the clerk's case maintenance system." [ECF.16-10, p.7]. The E-Filer User Manual plainly indicates that documents transitioned from the "pending" or "correction" queue to the "abandoned" queue are, in fact, deemed "abandoned" and *"unable to be filed into the official court record."* [ECF.16-6, p.27 (*emphasis added*)]. The procedures and protocols outlined by EFA in the User Manual mean what they say --- documents placed in the abandoned queue because of inaction by the filing party are "abandoned" and not "filed."

> "[T]he rules of construction applicable to statutes also apply to the construction of rules." "[W]here reasonable differences arise as to the meaning or application of a statute, rules of statutory construction control." "A 'statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts' and is not to be read in isolation, but in the context of the entire section."

*United Bank v. Estate of Frazee,* 197 So. 3d 1190, 1193 (Fla. 4th DCA 2016) (Internal citations omitted). Provisions of a statute or other governing law must be read *in pari materia* giving effect to each one. "[I]f from a view of the whole law, or from other laws *in pari materia* the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail...." *United Bank v. Estate of Frazee,* 197 So. 3d 1190,

1193–94 (Fla. 4th DCA 2016). It would make no sense to provide for a pending queue, abandoned queue, or judicial review of deficient documents if indeed every document tendered to a clerk were deemed "filed" regardless of any deficiencies. To the contrary, per the E-Filing Manual, "[o]nce a document has been moved to Abandon Filing status, no updates/corrections can be made to that submission on the Portal by the filer. It is deemed to have been abandoned and unable to be filed into the official court record." [ECF.16-6, p.27].

## IV.   Caselaw Distinguished

There is a dearth of caselaw discussing implications of the abandoned queue for determination of filing dates or interpreting FSC e-Standard 3.1.9. Three cases addressing the electronic "pending queue" suggest, at first reading, that the March 2019 date would be the "filed" date. However, all three are distinguishable and, based on the facts of this case, such a determination would not be in keeping with the rules promulgated by the Florida Supreme Court's FCTC and the EFA.

There are two cases from the First District Court of Appeal which address the electronic "pending queue": *State v. Johnson,* 139 So.3d 968, 969 (Fla. 1st DCA 2014), and *Pettway v. City of Jacksonville,* 264 So.3d 210 (Fla. 1st DCA 2018). In both decisions, the appellate court determined the date of filing to be the date the document was initially received by the clerk even though each document was placed in a "pending queue" and corrected at a later date.

20

In 2014, the First District Court of Appeal found a notice of appeal in a criminal matter was "filed" (and was therefore timely) when it was tendered for filing with the clerk through the e-portal system, not when it was corrected fourteen days later. *Johnson,* 138 So.3d at 969. The court relied on pre-electronic filing caselaw authority which deemed a document "filed" when delivered to the proper officer. No mention is made, and no discussion is had, of the electronic filing standards of the Florida Supreme Court, the FCTC, or the EFA. It does not appear these standards and rules were ever presented to or considered by the *Johnson* court. There is also no evidence that the document had ever been declared to be "abandoned."

In 2018, relying on its earlier decision in *Johnson,* the First DCA found a petition for *certiorari* timely deeming its initial date of submission to the appellate court through the e-filing portal to be its "filing" date rather than the date five days later when it was properly corrected in the pending queue. *Pettway,* 264 So.3d at 212. Once again, the appellate court made no mention of, and did not appear to have been presented or to have considered, the standards set forth by the e-filing authorities. Once again, the case did not involve a pleading which was declared to be "abandoned."

One federal court decision reaches a similar result. In *M.W. v. Ford Motor Company*, 2015 WL 4757892 (M.D. Fla. 2015), counsel for the plaintiffs

submitted a products liability complaint and related paperwork via the E-Portal to Hillsborough County Circuit Court on August 6, 2014, and instantaneously received an email from the E-Portal confirming receipt. *M.W.,* 2015 WL 4757892 at *1. The Hillsborough Clerk reviewed the submission, identified deficiencies, and moved the filing to the pending (a/k/a correction) queue simultaneously advising the plaintiffs' counsel via email of the placement in the correction queue and of the "five (5) business days to correct." *Id*. After the plaintiffs' counsel failed to act, on August 22, 2014, the E-Portal placed the filing in "judicial review" and again emailed the plaintiffs' counsel stating:

> Please be advised that [the August 6th submission] was not corrected and has been Filed for Judicial Review in accordance with the Florida Supreme Court Standards for Electronic Access to the Courts, section 3.1.11, Local Document Receiving. This action has been taken for the following reason:
>
> On 8/6/14, [the August 6th submission] was returned for corrections to be made within 5 business days. As of 8/22/14, no correction has been received. *This filing will not be filed/processed*.

*Id*. at *2 (emphasis added). This prompted action on the part of the plaintiffs' counsel to then contact the Hillsborough Clerk who advised that the Complaint would need to be re-filed. *Id*. As directed, the plaintiffs' counsel re-filed the complaint which was given a date and time stamp of: "Filed 08/22/2014 06:27:46 PM." The defendants then moved to dismiss the Complaint as time-barred based on the later date. *Id*. at *3.

The Middle District observed that the plaintiffs' counsel did not act diligently to correct the filing within the five-day window as directed by the Hillsborough Clerk. Nonetheless, the district court reasoned that the Clerk erred by not docketing the filing after five business days when placed in "judicial review," thus maintaining the August 6, 2014, time stamp, in accordance with FSC e-Standard 3.1.13.[13] *Id.* at *3-4. In reaching its decision, the Middle District relied heavily on FSC e-Standard 3.1.14 which stated, "[f]or purposes of determining timeliness, a filing shall be deemed filed on the date and time the electronic filing is received at the portal."

Unlike the state court decisions in *Johnson* and *Pettway* which never mentioned the e-filing standards, the *M.W.* court considered and rendered its decision based on *some* e-filing standards. However, the *M.W.* court did not review all of the applicable standards. Furthermore, Section 3.1.14, one of the key standards it relied upon, has been eliminated from the current Version 18.0 of the standards and the language contained therein has not been adopted into any of the other standards.

---

[13] The *M.W.* court examined FSC e-Standard Version 14.0 Adopted modifications, May 2014. Section 3.1.13 therein, *Local Documents Receiving*, has been re-numbered as 3.1.9 in the current Version 18.0 Adopted modifications August 2017. Both provisions contain the same language: ". . . after which time the filing will be docketed, as filed, . . ."

*Johnson, Pettway,* and *M.W.* are further distinguishable from the case at bar. In all three cases, the court preserved the original "filing" (i.e. submission) dates of documents placed in the "pending" or "correction" queue by the clerk. But none involved a document which had been deemed abandoned.[14] No rule allows for an abandoned pleading to be resurrected and declared "timely." No court has done so either. In each of these cases, a corrected document was filed by the submitting party within a relatively short time-frame[15] without the document being placed in an "abandoned" queue. Thus, the question presented each of the *Johnson, Pettway,* and *M.W.* courts was only whether the "corrected" document should relate back to the date of the initial submission.

The Town does not contend that a document temporarily moved to the correction queue and thereafter timely corrected and filed could not be accepted into the court's maintenance system and receive a filing date as of the date of initial submission under certain circumstances. But that is not the scenario presented here. An uncorrected document that is deemed abandoned under the

---

[14] The 2014 version of the Manual also disallowed updates or corrections but simply moved a non-conforming document to an undefined "judicial review," without reference to abandonment. https://www.myflcourtaccess.com/Help/Florida%20Courts%20E-Filing%20Portal%20User%20Manual%20June%202014.pdf, p.102. The specific language deeming the document "abandoned" and "unable to be filed" has been added since that time.

[15] Correction made within sixteen days (*M.W.); * correction made within fourteen days (*Johnson),* and correction made within five days (*Pettway*).

applicable rules, ignored for months, and then sought to be resurrected long after the limitations period expired is a different animal entirely.

It is important to note that none of the *Johnson, Pettway,* or *M.W.* courts enunciated a bright line rule. Rather each court examined the specific facts which lead to the placing of the documents in the clerk's "correction" queue. Furthermore, *M.W.* evaluated the errors on the part of both the filer and the clerk.

The *M.W.* plaintiffs delayed correcting the mistake by a period of sixteen (16) days. *M.W.,* 2015 WL 4757892 at *2. The district court observed this lack of diligence and advised it was insufficient to sustain equitable tolling. *Id.* at *5 ("equitable tolling cannot be applied when an untimely filing could have been avoided with due diligence.") However, because it determined that the clerk had *also* erred, it found equitable tolling was justified. *Id.* at *6. Specifically, the court determined that if the "action appear[ed] to be untimely," it was *caused* by the clerk leaving the complaint in the pending queue too long, not docketing the complaint, and instructing counsel to file a new complaint. *Id.* at *6. The evidence of record in *M.W.* included an admission by the chief deputy clerk that its failure to comply with the standard to "bring it down into [the case maintenance system]" was the cause of the delay. *Id.* at *4.

Plaintiff would undoubtedly argue that the Leon County Clerk made the same error here – it did not "docket" the complaint "as filed" after five business

days in accordance with FSC 3.1.9[16]. However, this would not render March 22, 2019, the date of filing. Two important differences between the facts presented the *M.W.* court and this Court must be recalled.

First, the *M.W.* court relied upon then FSC Standard 3.1.14 which explicitly provided "a filing shall be deemed filed" when "received at the portal." *Id.* at *4. This standard no longer exists and is inapplicable to this Court's consideration of the present facts.

Second, unlike the *M.W.* clerk's stated practice of accepting a conflicting document into its maintenance system, the evidence of record in this case is that the current standard is the exact opposite. Although the same language of the former Standard 3.1.13 still exists, the current EFA rules authorize the clerk to move a non-conforming document into the "abandoned filing" queue rendering it "*unable to be filed into the official court record*." [ECF.16-5, ¶¶11-13; ECF.16-6, p.27]. Such documents are "not filed." [ECF.16-5, ¶11]. This is the ubiquitous practice of Florida's County Clerks in complying with FSC Standard 3.1.9. [ECF.16-5, ¶13].

To give effect solely to the literal import of the one phrase in 3.1.9 (". . . after which time the filing will be docketed, as filed, . . ."), would be to ignore the remainder of the sentence (". . . and process for judicial review. . ."), and to

---

[16] This same standard was 3.1.13 at the time of the decision in *M.W.*

further ignore the intent which is evident from reading all of the standards and rules *in pari materia* – that is, to provide for an opportunity to correct, followed by abandonment thereof. Such an interpretation of FSC Standard 3.1.9 would effectively nullify the separate existence of a "judicial review"/ "abandoned"[17] queue folder or other electronic storage area as part of the e-filing process in Florida's courts. [ECF.16-5, ¶12]. Per the EFA, placing a non-corrected document in the "abandoned queue," thus rendering it unable to be filed into the official records, is a viable and continuing component to the Portal's E-Filing system and widespread, accepted practice among Florida's County Clerks. [ECF.16-5; ¶13; ECF.16-6, p.27].

The factual dynamics and consequences of Plaintiff's Complaint being placed in the Leon County Clerk's "abandoned" queue distinguish this matter from the scenarios presented in *Johnson, Pettway,* and *M.W*. In accordance with the e-standards, at the first opportunity for review (early Monday morning on March 25, 2019, following the late Friday submission), the Leon County Clerk reviewed the document, noted the incorrect venue which prevented it from being accepted, and promptly notified Plaintiff's counsel through the same three email addresses. The notice underscored the five (5) day deadline to correct the mis-

---

[17] Carolyn Weber, Portal Program Manager for the Florida Courts E-Filing Authority ("EFA") explains that "judicial review" and "abandoned queue" are synonymous. [ECF.16-5, ¶12].

styled Complaint and clearly stated the document had to be corrected *before it could be filed*. The Complaint was, in fact, submitted to the wrong venue and properly rejected, and placed in the "correction" queue by the Leon County Clerk. Contrary to the facts presented the *M.W.* court, there is no evidence the Leon County Clerk erred in any way. Conversely, it has complied with all applicable rules and standards.

### V.   Plaintiff's *ex parte* Motion does not present a case for excusable neglect

Plaintiff's *ex parte* Motion acknowledges the firm's receipt of the 3/22/19 acknowledgment emails and yet contends, without explanation, that the 3/25/19 and 4/3/19 Leon County Clerk and E-Portal's "notifications of corrections or mis-filings were not received by the undersigned's firm" [ECF.16-1, p.18, ¶5], despite the fact that they were sent to the same email addresses. Todd Newberry, System Project Analyst II for the Florida Courts EFA, provides the server communication between the E-Portal server and the host server for Plaintiff's counsel's law firm confirming the subject emails were transmitted to and received by counsel's office. [ECF.16-11, ¶¶5-6, Exh. A; ECF.16-9, p.5]. "[E]lectronic service is complete upon transmission" and "[c]ounsel is charged with knowledge of what he properly received." *Twin Rivers Engineering, Inc. v. Fieldpiece Instruments, Inc.,* 2018 WL 3458325, *6 (M.D. Fla. 2018).

Plaintiff's counsel does not suggest that the firm's server was down for weeks at a time, that the addresses had been changed, or provide any other explanation for such a statement. Furthermore, even if such an explanation were offered, it would not be sufficient in today's e-Portal system which provides easy access to the status under the "My Cases" tabs and provides continuing alerts until a submission is resolved or cleared by the user. *See, e.g., Bynes v. Vilos Navigation Co., Ltd.*, 18-CV-61840-UU, 2018 WL 9372459, at *1 (S.D. Fla. Sept. 21, 2018) (It was incumbent on plaintiff's counsel to monitor the docket; counsel's passivity is not excused even if the CM/ECF malfunctioned; a complete and ongoing abdication of the attorney's duties is not excusable.)

The First District Court of Appeal has held that a law firm's use of e-mail configuration and spam filter that allegedly deleted the court's order was not excusable neglect. *See Emerald Coast Utilities Authority v. Bear Marcus Pointe, LLC*, 227 So.3d 752, 757 (Fla. 1st DCA 2017). In *Emerald Coast*, the subject order was properly delivered to the appellant law firm without any error messages or bounce backs. *Id*. at 755. After a "handshake" between the two servers, the subject email went through an email filtering system configured to delete emails perceived to be spam and to alert the recipients of the receipt of the email. *Id*. at 755. These settings were exclusively controlled by the recipient, the appellant law firm. *Id*. at 755. Ultimately, the appellant law firm argued that

it never received the email containing the subject order in time to file a timely appeal. *Id*. at 756.

In outlining its opinion, the First District Court of Appeal stated excusable neglect is found "'where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry or any other of the foibles to which human nature is heir.'" [ ] However, "[t]he law requires certain diligence of those subject to it, and this diligence cannot be lightly excused.'" *Id*. at 756 (internal citations omitted). The *Emerald Coast* court ultimately held that the law firm's failure to properly configure its email system's spam folder to receive emails did not constitute excusable neglect; in so holding, the court cited to numerous opinions emphasizing that arguments for excusable neglect were even more tenuous when a party knew, or should have known, that a particular email and/or document would be arriving during the course of litigation. *Emerald Coast,* 277 So.3d at 757-78. *See also Bynes,* 2018 WL 9372459 at *1 (It was incumbent on plaintiff's counsel to monitor the docket; counsel's passivity is not excused.)

In the instant matter, Plaintiff's counsel is a prolific filer in Florida's state court system. Based on this familiarity with the E-Portal, her office would have been intimately familiar with the various notice emails received upon the submission of a document in the E-Portal. Notification through multiple emails

per filing, reflecting receipt and acceptance respectively, should be a matter of expectation. Moreover, every log-in to the E-Portal would have directed Plaintiff's counsel to unresolved alerts.

Plaintiff's complete inaction and lack of intervention for nearly four months, despite ample notice, resulted in the transition of the Complaint to the "abandoned" queue and resulted in serious consequences vis-a-vis the filing date of this action. Per the E-Filer Manual, as stressed throughout this motion, an attempted filing placed in the "abandoned" queue is, in fact, deemed abandoned[18] and unable to be "filed" in the official record. Such "abandonment" of Plaintiff's Complaint by his counsel is fundamentally distinguishable from a document placed in the "correction" queue, resulting in a delayed time stamp or filing date that pushes the filing slightly beyond the applicable statute of limitation, despite the vigorous efforts of the party or counsel to correct. Indeed, Plaintiff's counsel took no action even in June 2019 after she admits learning – purportedly for the first time – the Complaint had been abandoned. By the procedures and protocols promulgated by the Florida Courts EFA, an abandoned pleading cannot be filed. At the direction of the administrative judge, the Leon

---

[18] Black's Law Dictionary Free Online Legal Dictionary, *2nd Ed*., defines "abandonment" as: "the voluntary relinquishment of all rights, title, or claim to property that rightfully belongs to the owner of the property." https://thelawdictionary.org/abandonment/

County Clerk retrieved the Complaint from the abandoned queue and moved it to the correction queue for processing. The Clerk then stamped Plaintiff's Complaint as "FILED" on July 19, 2019. It was still in the wrong County.

The actions of the *M.W.* plaintiffs' counsel who attempted to correct the filing during the five business day window and, furthermore, filed a corrected pleading on the same day they received "judicial review" notice from the E-Portal, are far more diligent than those of Plaintiff's counsel. It is evident that the standards were followed by the Leon County Clerk each step of the way and that the rules worked exactly as intended for processing Plaintiff's misfiling. The inaction in this matter belongs wholly to Plaintiff's counsel, attributable exclusively to lack of diligence and monitoring of the firm's email system, thus precluding application of excusable neglect. *See Bynes,* 2018 WL 9372459 at *1.   The level of diligence shown is not comparable. Plaintiff's counsel's efforts in the instant matter are insufficient to establish excusable neglect or grounds for equitable tolling.

## VI.   Conclusion

Plaintiff's Amended Complaint alleges the latest prohibited action was his termination on October 9, 2018. The limitations period for the FPWA claim expired on Monday, April 8, 2019, 180 days from termination. The July 19, 2019,

filing date machine stamped on Plaintiff's Complaint, and reflected in the Leon County Circuit Court docket, passes this deadline by over three months.

As a general principle of law, litigants are entitled to rely on such limitations period in conducting their businesses, evaluating claims and preparing legal defenses. Plaintiff's attempted circumvention of this limitations period, stemming solely from opposing counsel's own administrative error and subsequent inaction, despite proper notice, represents an insufficient basis to deprive the Town of this available defense.

On the facts of this case, Plaintiff's Complaint was not filed until July 19, 2019, and as such, his whistleblower claim found in Count I of the Amended Complaint is untimely and the Town is entitled to summary judgment thereon.

Respectfully submitted this 25th day of September 2019.

COPPINS MONROE, P.A.

BY:   */s/ Gwendolyn P. Adkins*
Gwendolyn P. Adkins, FBN: 0949566
C. Todd Owen, FBN: 0112676
1319 Thomaswood Drive
Tallahassee, Florida 32308
Telephone: (850) 422-2420
Facsimile:  (850) 422-2730
gadkins@coppinsmonroe.com
towen@coppinsmonroe.com
bmiller@coppinsmonroe.com
cmarchena@coppinsmonroe.com

ATTORNEYS FOR DEFENDANT
TOWN OF SNEADS, FLORIDA

## CERTIFICATE OF WORD COUNT

In accordance with United States District Court for the Northern District of Florida, Local Rules 7.1(F) and 56.1(E), Defendant, Town of Sneads, Florida, certifies that this Motion for Summary Judgment and accompanying memorandum of law contains 7,046 words.

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Fla. Loc. R. 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*/s/ Gwendolyn P. Adkins*
Attorney